Martin Thomas **SCHWEINLE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 06–93–00101–CR.

Court of Appeals of Texas,
Texarkana.

Feb. 14, 1995.

Robert G. Turner, Turner & Gottlieb, Houston, for appellant.

John B. Holmes, Dist. Atty., Timothy G. Taft, Asst. Dist. Atty., Harris County, Houston, for State.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

This is an appeal by Martin Thomas Schweinle from a jury conviction for aggravated kidnapping. Schweinle was sentenced to fifteen years' confinement.

Schweinle contends that the trial court erred: (1) in admitting evidence of extraneous bad acts toward Nancy Carter; (2) in admitting evidence of extraneous assaults on

Dawn Wallin; (3) in admitting evidence of extraneous assaults on Janna Thamm; (4) in allowing a psychologist to introduce evidence of the appellant's character; and (5) in denying a requested instruction on the lesser included offense of false imprisonment.

Delynda "Dawn" Wallin began dating Schweinle in late 1990. The couple became engaged in late 1991, and Wallin moved into Schweinle's residence. Over the next several months, the couple argued often. By October of 1991, Wallin spent only some nights at Schweinle's residence.

On October 23, 1991, Schweinle went to the residence of Wallin's mother, looking for Wallin. Wallin was late for a prearranged meeting between the two. Wallin testified that Schweinle took her against her will and that, as they drove in his truck, Schweinle threatened Wallin with a gun.[1] Schweinle testified that Wallin went with him of her own free will and that, although he had a gun in the car, he never threatened her with it.

Both parties agreed that he drove to a partially completed subdivision where the roads were constructed, but no homes were built. There Schweinle beat Wallin and smeared food on her face, hair, and clothes. He then drove them to his residence, where he severely beat her. The next morning Schweinle returned Wallin to her home.

Schweinle contends that the trial court erred in admitting evidence, over objection, of extraneous bad acts toward Nancy Carter, who had dated Schweinle. At trial the State called Nancy Carter, who testified that Schweinle exerted psychological pressure to overbear her will. She told the jury of an incident which transpired at the home of Schweinle's parents, where she was told by Schweinle that she was free to leave, but that she did not feel free to do so. Schweinle objected at trial and now argues that the evidence should have been excluded on two bases: that the evidence was of a "bad act" and inadmissible under TEX.R.CRIM.EVID. 404(b) and that the evidence was unfairly prejudicial pursuant to TEX.R.CRIM.EVID. 403.

■ The determination of admissibility is within the sound discretion of the trial court, *Jackson v. State*, 575 S.W.2d 567, 570 (Tex. Crim.App. [Panel Op.] 1979), and will not be reversed on appeal unless a clear abuse of discretion is shown, *Werner v. State*, 711 S.W.2d 639, 643 (Tex.Crim.App.1986).

■ We must first decide if the evidence was inadmissible under Rule 404(b), which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

TEX.R.CRIM.EVID. 404(b). Although this rule enumerates specific purposes for which such evidence is admissible, the list of exceptions is neither exclusive nor collectively exhaustive. *Rogers v. State*, 853 S.W.2d 29 (Tex. Crim.App.1993). An unlisted exception is to refute a defensive theory. *Dabney v. State*, 816 S.W.2d 525 (Tex.App.–Houston [1st Dist.] 1991, pet. ref'd); *Wiggins v. State*, 778 S.W.2d 877 (Tex.App.–Dallas 1989, pet. ref'd).

■ The State argues that the evidence was admitted to refute Schweinle's defensive theory that Wallin entered his car of her own free will. Schweinle testified to this at trial to refute the State's charge of kidnapping. Carter's testimony was relevant for the State to refute Schweinle's testimony that Wallin freely decided to go with him. Carter's testimony was evidence that Schweinle is capable of overbearing the will of another. Carter's testimony was evidence that under Schweinle's control, a person did not feel free to leave even though Schweinle had not specifically forbade her leaving.

■ Schweinle contends that these acts occurred after the alleged offense against Wallin and she was unaware of them. He therefore urges that they are irrelevant. This evidence was not admitted as proof of

---

1. Wallin testified that Schweinle pointed a gun at her as they drove by a police car, telling her that he would shoot her if she sought help.

what prior acts Wallin was aware of, but rather it is evidence of what Schweinle was capable of and how he could control others.

■ Schweinle notes that the State submitted the evidence before he testified. The Court in *Rubio v. State,* however, indicates that the subsequent submission of the issue at trial renders the premature submission of this evidence harmless. *Siqueiros v. State,* 685 S.W.2d 68 (Tex.Crim.App.1985); *Rubio v. State,* 607 S.W.2d 498 (Tex.Crim.App. 1980). The evidence was properly admitted as an exception to Rule 404(b) because Schweinle subsequently took that position in his testimony.

Schweinle next contends that the probative value of the evidence was substantially outweighed by its prejudicial value. The probative value of the evidence is to refute Schweinle's testimony that Wallin freely chose to get into the truck and leave with him. This must be balanced against the danger of unfair prejudice resulting from the jury's hearing that Schweinle used psychological manipulation on Carter on an occasion other than the event for which he was being tried.

■ One way that evidence may create unfair prejudice is if it distracts the jury from the specifically charged offense and invites them to convict on a moral or an emotional basis rather than as a reasoned response to relevant evidence. *Montgomery v. State,* 810 S.W.2d 372 (Tex.Crim.App.1990). Carter's testimony of psychological manipulation is not an act at such a level that it would invite a jury to convict on emotional or moral grounds. Therefore, the prejudicial value is low compared to the high probative value of proving Wallin went with Schweinle against her will.

The State also contends that Schweinle "opened the door" to Carter's testimony of psychological pressure. Carter testified on direct examination as to admissions Schweinle had made to her concerning his relationship with Wallin. On cross-examination, Schweinle's attorney asked, "Do you recall him [Schweinle] also telling you that she [Wallin] went with him without any force or threats or anything?" The State then

approached the bench and, arguing that the door had been opened by Schweinle on this issue, requested permission to question Carter on whether she had on occasion gone unwillingly with Schweinle, even though physical force was not used. The trial court agreed and granted the State's request.

■ As a general rule, the State is entitled to present, on rebuttal, any evidence that tends to refute the defensive theory and evidence introduced to support that theory. The possibility that such rebuttal evidence may encompass extraneous offenses or acts on the part of the defendant does not preclude its admission into evidence. *Yohey v. State,* 801 S.W.2d 232 (Tex.App.–San Antonio 1990, pet. ref'd). Therefore, because Schweinle elicited testimony indicating that Wallin freely decided to leave with him, the State was then entitled to rebut that testimony with evidence, even if it included extraneous acts or offenses. This point of error is overruled.

■ Schweinle next contends that the trial court erred in admitting evidence of extraneous assaults on Wallin. There are four instances where Schweinle contends the court erred in admitting such evidence: (1) Wallin testified about prior assaults by Schweinle on her; (2) Lana Spiers, Schweinle's former girlfriend, testified that she met Wallin and that Wallin appeared to be a "basket case;" (3) Mary Knolle, a psychologist who had counseled Wallin while she dated Schweinle, testified on the state of mind of Wallin; and (4) the State asked the question of Schweinle whether he had once struck Wallin while she was pregnant in an attempt to abort the fetus.

Schweinle maintains that Wallin's testimony concerning her earlier physical abuse should have been excluded as an extraneous act, TEX.R.CRIM.EVID. 404(b), or as being unfairly prejudicial, TEX.R.CRIM.EVID. 403.

Initially, Schweinle requested and was granted a motion in limine concerning extraneous bad acts. During the trial, the court reversed its earlier ruling, thus allowing evidence of the prior assaults. The State argues that the evidence was admissible to

rebut the defensive assertion that Wallin decided on her own to go with Schweinle.

The defense argued that it was Wallin's decision to leave with Schweinle and that she was free to do as she chose. To rebut this defensive theory, the State contended that, due to the "battered women's syndrome," Wallin did not freely choose to go with Schweinle; rather, she did so only because she knew that if she did not she would be physically attacked.

As previously discussed, the general rule is that the State is entitled to present, on rebuttal, any evidence that tends to refute the defensive theory and evidence introduced to support that theory. The possibility that such rebuttal evidence may encompass extraneous offenses or acts on the part of the defendant does not preclude its admission into evidence. *Yohey*, 801 S.W.2d 232. Therefore, as Schweinle elicited testimony indicating that Wallin went with him of her own free will, the State was then entitled to rebut that testimony with evidence, including extraneous acts or offenses.

■ We must also balance the probative value of the evidence against its prejudicial value to analyze Schweinle's Rule 403 objection. The prejudicial value of the evidence is clearly high, because these extraneous assaults are the type of evidence which would prejudice a jury against Schweinle. The evidence would probably have failed a balancing test before the trial began. Due to the defense pursued by Schweinle, however, the probative value of the prior assaults increased. The evidence, therefore, became sufficiently probative for the trial court to find that the balancing test tipped in favor of admitting the evidence.

■ Schweinle next contends that the court erred in allowing evidence of extraneous assaults by admitting the testimony of Lana Spiers. Spiers was Schweinle's former girlfriend, who testified that when she met Wallin, Wallin appeared to be a "basket case." We fail to see how this statement is evidence that an extraneous offense took place. Neither does it incriminate Schweinle in any offense. This point of error is overruled.

■ Schweinle next contends that the trial court erred in allowing evidence of extraneous assaults by admitting the testimony of Mary Knolle. Knolle, a psychologist who had counseled Wallin during the time that she dated Schweinle, testified on Wallin's state of mind.

Schweinle objected to Knolle's testimony on the basis that Knolle was not qualified as an expert and that the evidence was not relevant. However, here, as with the prior point, no specific objection to evidence on prior extraneous assaults was made at any point in Knolle's testimony. Schweinle did not preserve error in Knolle's testimony of extraneous assaults.

■ Schweinle next contends that it was error for the trial court to allow evidence of extraneous assaults by permitting the State to question Schweinle as to whether he had once struck Wallin while she was pregnant in an attempt to abort the fetus. While this question itself, even without a response, might reasonably be called prejudicial, no error was preserved. Here, as with the prior two points, no objection was made. Thus, no error was preserved.

By Schweinle's next point of error, he contends that the trial court erred in admitting evidence of extraneous assaults on Janna Thamm. Schweinle argues first that testimony of an incident between Thamm and Schweinle represented a prior assault and that the court erred in allowing it, as it was evidence of an extraneous offense admitted in violation of Rule 404(b). As discussed earlier, this evidence was admissible to rebut the defensive theory that Wallin freely decided to leave with Schweinle.

■ Next, Schweinle argues that the photographs of Thamm were unfairly prejudicial in violation of TEX.R.CRIM.EVID. 403. At trial, the State submitted four photographs of the bruising that resulted from the assault on Thamm. The State contends that the photographs were admissible to corroborate her testimony. Allegedly inflammatory photographs are generally admissible where verbal testimony as to the matters depicted in photographs is also admissible. *Hicks v.*

*State*, 860 S.W.2d 419 (Tex.Crim.App.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2725, 129 L.Ed.2d 848 (1994). Therefore, the analysis is whether Thamm's testimony was unfairly prejudicial.

 The testimony was probative of the fact that Schweinle had kept a person against her will. The State desired to prove this because Schweinle had presented a defensive theory that Wallin freely chose to go with him. This is balanced against the prejudicial effect of the jury's hearing about prior assaults by Schweinle. The decision of the trial judge to admit this evidence was not an abuse of discretion. This point of error is overruled.

By his next point of error, Schweinle contends that the trial court erred in allowing a psychologist to testify on his character. Schweinle argues that this was an improper attempt to assign group characteristics to Schweinle without having counseled or tested Schweinle. He further argues that the probative value of this testimony was substantially outweighed by its unfairly prejudicial effect, because the evidence was not relevant.

 Schweinle contends that Knolle's testimony was merely a method of introducing hearsay evidence from Wallin, and that the psychologist's testimony was an improper attempt to assign group characteristics to Schweinle. In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely objection stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. TEX.R.APP.P. 52(a). While an objection to the relevance of the evidence and an objection that Knolle was not an expert were lodged, and several others were pointed out by Schweinle, no objection to hearsay [2] or to assigning group characteristics to Schweinle was made. This point of error is overruled.

 Next, Schweinle contends that Knoll's testimony lacks relevance and is thus

easily outweighed by its prejudicial value. This evidence was offered to explain the "battered women's syndrome," which was a central theme presented by the State on the issue of whether Wallin freely chose to leave with Schweinle. This evidence is relevant to this issue and is probative. And while it, along with evidence of other extraneous offenses, may have had a prejudicial effect, it was not abuse of discretion for the court to overrule such an objection.

 By his next point of error, Schweinle contends that the trial court erred in denying a requested instruction on the lesser included offense of false imprisonment. The two-part *Royster* test is used to determine whether a lesser included offense should be included in the jury charge. *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App.1981); *Blalock v. State*, 847 S.W.2d 461 (Tex.App.–Houston [1st Dist.] 1993, pet. ref'd). First, the lesser included offense must be within the proof necessary to establish the offense charged. Second, there must be some evidence that if the defendant is guilty, he is guilty only of the lesser offense. *Gibbs v. State*, 819 S.W.2d 821, 831 (Tex.Crim.App. 1991), *cert. denied*, 502 U.S. 1107, 112 S.Ct. 1205, 117 L.Ed.2d 444 (1992); *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App. 1981); *Blalock*, 847 S.W.2d at 463.

 Both felony and misdemeanor false imprisonment are lesser included offenses of kidnapping. *Blalock*, 847 S.W.2d at 463. The issue then is whether there was some evidence to indicate that, if Schweinle was guilty, he was guilty only of the lesser included offense of false imprisonment. Under *Saunders*, there are two ways in which the evidence may indicate that the defendant is guilty only of the lesser offense. First, there may be evidence which refutes or negates other evidence establishing the greater offense. Second, a defendant may be shown to be guilty only of the lesser offense if the evidence presented is subject to different

---

2. Schweinle points out that his counsel objected saying, "I think that things were told to her that she recorded in her file are statements by the complainant made to her, and I'm sure ... there will be statements made by the complainant to her that gives her the information to form the opinion." This objection, if it was an objection, seems to be an objection on the basis of an opinion which was not based on personal perceptions of the witness, rather than hearsay.

interpretations. *Saunders v. State,* 840 S.W.2d 390, 391 (Tex.Crim.App.1992).

 A person commits the offense of kidnapping if he intentionally or knowingly abducts another person. TEX.PENAL CODE ANN. § 20.03(a) (Vernon 1994). Thus, abduction is the extra element required by kidnapping and not required by false imprisonment. *Abduct* means to restrain a person with intent to prevent his liberation by secreting or holding him in a place where he is not likely to be found or using or threatening to use deadly force. TEX.PENAL CODE ANN. § 20.01(2) (Vernon 1994). *Restrain* means to restrict a person's movement without consent, so as to interfere substantially with his liberty, by moving him from one place to another or by confining him. TEX.PENAL CODE ANN. § 20.01(1) (Vernon 1994).

Schweinle argues that he only had to refute two theories of abduction: pointing the gun at Wallin in the truck and keeping Wallin at his home while he physically abused her. Schweinle argues that the State agreed and points this Court to the transcript where the State noted the two theories. However, there the State indicated that the entire event was "one continuing act" and that "the abduction occurred over and over again." Because the *Royster* test indicates there must be some evidence that, if the defendant is guilty, he is guilty *only* of the lesser offense, there must be evidence open to different interpretations or evidence refuting the greater offense under every theory of kidnapping presented, *Blalock,* 847 S.W.2d at 463.

 In the case at bar, there was evidence that Schweinle took Wallin from her home against her will to his car and drove her to an undeveloped subdivision. Keeping her isolated at this location constitutes restraint in a place where she was not likely to be found and therefore qualifies as an abduction under the statute. The only evidence that refuted this evidence was Schweinle's testimony that she freely chose to go with him and stayed in the truck of her own free will. However, this evidence attempts to refute both the charge of kidnapping and the charge of false imprisonment. Therefore, this evidence does not indicate that, if

Schweinle was guilty, he was guilty *only* of the lesser offense.

To be entitled to the submission of a jury issue on false imprisonment, Schweinle must present evidence refuting every theory of kidnapping, without refuting false imprisonment with the same evidence. However, no evidence refutes the kidnapping theory of secreting Wallin in a place where she was not likely to be found without also refuting false imprisonment. Therefore, Schweinle presented no evidence that, if he is guilty, he is guilty only of the lesser offense. The trial court correctly refused to include false imprisonment in the charge. This point of error is overruled.

The judgment of the trial court is affirmed.