**Betty Carlene Johnson EASLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–97–00177–CR.

Court of Appeals of Texas, Texarkana.

Submitted July 16, 1998.

Decided Aug. 26, 1998.

Rehearing Overruled Sept. 15, 1998.

Keith Stewart Hampton, Austin, for appellant.

James P. Finstrom, Jefferson, for appellee.

Before GRANT and ROSS, JJ., and T.C. CHADICK, Justice, Supreme Court of Texas, Retired, Sitting by Assignment.

## OPINION

ROSS, Justice.

In a trial by jury, Betty Easley was found guilty of murder and was assessed a punishment of life imprisonment. Easley appeals, asserting three points of error: 1) the jury's answer to a special issue submitted at the punishment phase is against the great weight and preponderance of the evidence; 2) the court failed to properly apply the law of temporary insanity to the facts in its charge to the jury at the guilt/innocence phase; and 3) trial counsel was ineffective.

## BACKGROUND

Easley's neighbor heard a gunshot in the early morning hours of December 9, 1996. He looked out the peephole of his door and saw Easley standing over her husband, Jimmy Wayne Easley, unloading a gun. The neighbor picked up the telephone to call the police and then heard another gunshot. He then saw Easley walk into her house.

Frank Williams, an investigator for the Marion County sheriff's office, was the first to respond to the scene. Williams observed the deceased victim lying on the ground outside the neighbor's residence. Williams followed a trail of blood leading from the victim to the Easley residence and knocked on the door. Williams knocked three times before Easley opened the door. Easley was dressed in her bathrobe. Williams saw a single-shot .410 gauge shotgun propped against a chair to one side of the back door. He retrieved that weapon and determined that it contained a spent shell casing. After retrieving the gun, Williams told Easley to get dressed. Easley said that she needed to take a pill and to use the bathroom. Williams checked the bathroom for weapons, then allowed Easley to go in as she had requested. When Easley came out, Williams read her the *Miranda*[1] warnings. Easley then made the following statements to Williams "in a real excited nervous manner:" "Is he dead? I meant to kill him. I guess I shouldn't have kept shooting, but I meant to kill him. Is he dead? Oh, I guess I shouldn't be talking to you, should I?"

Williams instructed Easley to get dressed. As she was getting dressed, she was crying and upset and further stated to him: "He wanted me dead. I should of [sic] saved one shell and killed myself. Frank, you kill me."

After Easley dressed, she took a drink of water, then took a pill for "her nerves" with what Williams thought was a glass of wine sitting beside the bed. Williams handcuffed Easley and placed her in the police car. She continued to speak to Williams saying: "Frank, is he dead? I meant to kill him. I just should have stopped shooting him so much. .... You know he was trying to kill me. He was trying to force pills down my throat." Williams testified that Easley seemed alert and excited, not sleepy, during the arrest.

During his investigation at the residence, Williams noted that there were various kinds of pills in Easley's purse, on the floor of the house, in the bathroom, and in her bathrobe pocket. Easley did not remember how the pills got into her bathrobe pocket.

Game Warden Mike Walker arrived, and Williams asked Walker to drive Easley to jail. During the ten-minute ride to jail, Walker claims that Easley made more inculpatory statements similar to those described above, but Easley claims she does not recall making any statements to Walker. At the jail, Easley was released to jailer Linda Smith. Smith testified that, as she booked Easley into the jail, Easley became progressively groggier. Easley told Smith that "Wayne [the victim] had been poking pills down her all night" and "[s]he did not know how many she had taken or what kind." Smith had Easley transported to the hospital.

A drug screen of Easley's stomach contents, urine, and blood revealed the presence of Esgic, a prescription medication containing butalbital (a barbiturate derivative), diphenhydramine (an antihistimine), and caffeine. The amount of butalbital found in her system was almost toxic. According to the testimony, Easley had likely ingested these

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

drugs within four hours before the test was run on her stomach contents.

In her defense, Easley claimed that she was afraid her husband was going to kill her. On the night before the offense, Easley and her husband drove home from out of state where they had been visiting her daughter. During the drive, Easley took a pill the victim gave her, which she thought was Xanax. This pill made her groggy, and Easley testified that Xanax did not normally make her groggy. The two went to bed shortly after arriving home. The next thing Easley remembered was the victim standing over her, telling her she was having a nightmare, and then demanding oral sex. Easley refused, and the victim gave her some pills and said he would leave her alone if she would take them. Easley took the pills, but had no idea how many or what they were. Easley later awoke to the victim yelling at her from some place outside her bedroom. She tried to use the telephone in the bedroom, but the line was dead. Easley did not remember anything else until Frank Williams knocked on the door. She had no recollection of being taken to jail and thought she had been taken directly to the hospital.

In support of Easley's contention that she was afraid of her husband, her daughter, Stephany Carter, testified to prior abuse inflicted on Easley by the victim. She testified that, on prior occasions, she had seen the victim kick and hit her mother and say cruel things. The daughter was present on one occasion when the police were called due to an altercation between Easley and the victim. Marion County sheriff's deputy, Tommy Beckam, testified that he went to Easley's house on September 7, 1994, and arrested the victim for family violence assault. Beckam's opinion was that Easley was in fear for her safety that day in 1994.

## ANALYSIS

I. Answer to Special Issue Submitted in the Punishment Phase

██ In the first point of error, Easley argues that the jury's answer to a special issue submitted in the punishment phase is against the overwhelming weight and pre-

ponderance of the evidence. A verdict will be set aside for factual insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim.App.1996). We must give appropriate deference to the jury's decision and not substitute our judgment for its. *Id.* The jury assesses the weight and credibility of the evidence. *Hayes v. State*, 728 S.W.2d 804, 809 (Tex.Crim.App.1987).

The special issue answered by the jury is as follows:

Do you find by a preponderance of the evidence that on the occasion in question, at the time of the commission of the offense for which defendant is on trial the defendant, BETTY CARLENE JOHNSON EASLEY, caused the death of Jimmy Wayne Easley while she, BETTY CARLENE JOHNSON EASLEY, was under the immediate influence of sudden passion arising from an adequate cause?

Easley asserts that the jury's negative answer to this question is against the great weight and preponderance of the evidence.

A defendant who is convicted of murder can mitigate punishment if she proves by a preponderance of the evidence that she "caused the death under the immediate influence of sudden passion arising from an adequate cause." TEX. PENAL CODE ANN. § 19.02(d) (Vernon 1994). " 'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2) (Vernon 1994). " 'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE ANN. § 19.02(a)(1) (Vernon 1994).

The evidence established that Easley did not remember the events immediately before the shooting. The last memories she had of the night of the shooting were of the victim awakening her demanding oral sex and ask-

ing her to take pills. Easley took the pills and went back to sleep. She later awoke to the sound of the victim yelling at her from somewhere outside her bedroom. Easley shut and locked her bedroom door and discovered that the telephone in the bedroom was not working and then discovered that the telephone line was dead. Easley had no more recollection of the events until Officer Williams knocked on the door.

At trial, Easley testified that she thought the victim was "trying to o.d." her by making her take his pills. She also testified that she was afraid of the victim due to previous violent episodes and was in fear for her safety the night of the shooting. However, Easley also testified that the victim had not made any threat to her life on the day of the shooting.

The evidence shows that Easley caused the death of her husband by shooting him multiple times with a shotgun that required reloading after each shot. Beyond that, the record is simply devoid of any indication as to Easley's state of mind immediately before the shooting. Based on this evidence, we cannot say that the jury's answer to the special issue is so against the great weight and preponderance of the evidence so as to be manifestly unjust. Therefore, the evidence is factually sufficient to support the jury's negative answer to Easley's claim of sudden passion. The first point of error is overruled.

II. Failure to Apply the Law of Temporary Insanity

In the second point of error, Easley claims that the trial court erred by failing to apply the law of temporary insanity to the facts of the case in the charge at the guilt/innocence phase of the trial. The abstract portion of the charge on this topic reads:

You are instructed that involuntary intoxication is a defense to prosecution for an offense when it is shown that the accused has exercised no independent judgment or volition in taking the intoxicant and that as a result of her intoxication the accused did not know that her conduct was wrong, or was incapable of conforming her conduct to the requirements of the law she allegedly violated.

The portion of the charge applying this law reads:

Now, if you find from the evidence beyond a reasonable doubt that at the time and place, and on the occasion, in question the defendant, BETTY CARLENE JOHNSON EASLEY, did shoot Jimmy Wayne Easley, as alleged in the indictment, but you further find from the evidence, or you have a reasonable doubt thereof, that at such time the defendant was suffering a disturbance of mental or physical capacity resulting from the introduction of an intoxicating substance into her body, and that she had exercised no independent judgment of volition in taking the intoxicant, and that as a result of her intoxication she did not know that her conduct was wrong, then you will find her not guilty.

Easley contends that the application paragraph failed to instruct the jury to acquit if they found she was, as a result of involuntary intoxication, *incapable of conforming her conduct to legal requirements of the law she allegedly violated.*

Although no objection to the charge was made at trial, Easley contends that error was not waived because this charge error was fundamental in that it violated her right to trial by jury and due process of law under Article I, §§ 10, 15, and 19 of the Texas Constitution and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. *See Ex parte Clark,* 597 S.W.2d 760 (Tex.Crim.App.1979). Her argument is unavailing. The Texas Court of Criminal Appeals has recently held that "there generally is no 'error' in the charge unless the defendant objects in writing to claimed 'errors' of commission and omission in the charge." *Posey v. State,* 966 S.W.2d 57, 61 (Tex.Crim.App.1998). Furthermore, the State contends, and we agree, that there was no evidence presented at trial which suggested that Easley was incapable of conforming her conduct to the requirements of the law. Therefore, the trial court properly charged the jury based upon the evidence; any other charge would have been improper. The second point of error is overruled.

**250**

III. Ineffective Assistance of Counsel

In her third point of error, Easley contends that trial counsel was ineffective in failing to 1) request the ex parte appointment of an expert to assist with her defense; 2) object to the testimony of an unqualified expert in blood stain interpretation; 3) object to the introduction of extraneous bad acts; 4) request a limiting instruction regarding the consideration of the State's rebuttal evidence; and 5) request an instruction on temporary insanity. Easley asserts that, as a whole, these five instances demonstrate that trial counsel was ineffective.

 To prove ineffective assistance of counsel, the defendant must show that her counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced her defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The review of counsel's representation is highly deferential; thus, we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. In determining whether counsel was effective, we look at the trial as a whole, not at isolated incidents. *Moore v. State*, 694 S.W.2d 528, 531 (Tex.Crim.App.1985). The constitutional right to counsel does not mean errorless counsel. It means counsel reasonably likely to render reasonably effective assistance. *Ex parte Cruz*, 739 S.W.2d 53, 57–58 (Tex.Crim.App.1987). Counsel is not rendered ineffective because she may have erred during trial and other counsel might have tried the case differently. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App.1984). In reviewing counsel's representation, we first determine whether the representation was outside the range of professionally competent assistance. We then determine whether a different outcome would have occurred had counsel's representation not been defective. *Jayroe v. State*, 707 S.W.2d 652, 654 (Tex.App.-Texarkana 1986, pet. ref'd). In meeting the second criterion, the accused must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Ex parte Wilson*, 724 S.W.2d 72, 75 n. 1 (Tex.Crim.App.1987).

A. Failure of counsel to request an ex parte appointment of an expert

 Easley argues that since her state of mind was at the heart of her defense, an expert was needed to explain how her involuntary ingestion of large amounts of butalbital and her years as an abused spouse would affect her state of mind at the time of the murder. Therefore, Easley argues that her trial counsel was ineffective for not making an ex parte request for an expert. In support of the need for an expert, Easley argues that an instruction on involuntary intoxication was requested and granted, although answered in the negative by the jury. Easley asserts that the defense of involuntary intoxication would have been greatly enhanced had her trial attorney presented expert testimony regarding the effect of an overdose of the drugs which she had ingested.

Easley's trial counsel did make a motion for a psychiatric evaluation of Easley's mental status and competency to stand trial. Although the record does not indicate whether the motion was granted or denied or if a psychiatric evaluation was in fact performed, counsel for Easley did not dispute the assertion made by the State's counsel at oral argument, that such motion was granted and that an evaluation was performed at Vernon State Hospital.[2] When such an evaluation has been performed pursuant to court order, a written report of the examination must be submitted to the court and copies of the report must be furnished to the defense counsel and the prosecuting attorney. TEX. CODE CRIM. PROC. ANN. art. 46.02, § 3(d), art. 46.03, § 3(d) (Vernon Supp.1998). No report of this examination has been included in the record, so we are unable to determine how any such report may have influenced defense counsel's strategy. However, since the record shows that Easley's lawyer did file a

2. In her own testimony at the punishment phase of the trial, Easley refers to being in the hospital at Vernon.

motion for an evaluation of Easley's mental status and competency to stand trial, and since her appellate counsel did not dispute that this motion was granted or that the evaluation was performed, it is a reasonable conclusion that the results of this evaluation could have influenced the decision by Easley's trial counsel not to make an ex parte request for an expert to testify as to her state of mind at the time of the killing. In the absence of evidence to the contrary, we cannot say that this decision denied Easley the effective assistance of counsel.

B. Counsel's failure to object to blood stain interpretation testimony

▮ Next, Easley argues that her trial counsel was ineffective because no objection was made to the expert qualifications or testimony of Frank Williams, an investigator for the Marion County sheriff's office, when he testified concerning his interpretations of the blood stains found at the crime scene. The only evidence in the record of Williams' qualifications is that he went to blood stain interpretation school at Kilgore College and had twenty-two years of law enforcement experience. Easley contends that, because trial counsel never objected to his qualifications as an expert, the trial court was never called upon to assess his credentials or given an opportunity to exclude his testimony based on lack of qualifications. Easley observes that Williams never said he *graduated* from blood stain interpretation school, only that he *went* to such a school.

In response, the State suggests that Williams could have demonstrated his expert credentials had he been called upon to do so. Again, the failure of trial counsel to object to this testimony could have been an additional strategic decision on the part of defense counsel not to waste the trial court's time or to antagonize the jury.

From an examination of the record on this point, we cannot say that counsel's performance fell outside the range of professionally competent assistance.

C. Counsel's failure to object to extraneous bad acts

▮ During rebuttal, the State offered the testimony of Michael Chatham, a former husband of Easley, in which he described an episode where Easley had stabbed him, without provocation, while he slept. Chatham also testified that the telephone line had been disconnected from the wall and he was unable to call for help. The stab wound required hospitalization. Chatham testified that at the time of the stabbing Easley was abusing Xanax, marihuana, and alcohol. Chatham also testified, over a hearsay objection, that Easley admitted to him that she had beaten another man senseless with a baseball bat over a disagreement. Trial counsel did not object to Chatham's testimony as being irrelevant, prejudicial, or that it failed to show motive, intent, scheme, or design under TEX.R.CRIM. EVID. 404(b) (Vernon 1997).[3] Easley now asserts that the failure to object constituted ineffective assistance of counsel.

The State argues that Chatham's testimony was offered to rebut Easley's assertion that she was a victim of abuse in past relationships and went to show that Easley was the aggressor. Easley herself had testified earlier to the abuse she had tolerated at the hands of men in relationships prior to the one with the victim, including abuse while married to Chatham. Also, the State contends that the evidence demonstrated Easley's motive, intent, scheme, and design under Rule 404(b).

▮ As a general rule, the State is entitled to present, on rebuttal, any evidence that tends to refute the defensive theory and evidence introduced to support that theory. The possibility that such rebuttal evidence may encompass extraneous offenses or acts on the part of the defendant does not preclude its admission into evidence. *Schweinle v. State*, 893 S.W.2d 708, 712 (Tex.App.-Texarkana 1995), *rev'd on other grounds*, 915 S.W.2d 17 (Tex.Crim.App.1996).

Easley raised the issue of her past relationships herself in support of her abused spouse defense theory. The State was clearly entitled to offer rebuttal evidence which went directly to this defensive theory. The

---

**3.** Now found at TEX.R. EVID. 404(b).

first prong of *Strickland* is not met in this contention; therefore, this claim of ineffective assistance fails.

D. Trial counsel's failure to seek an instruction limiting consideration of the State's rebuttal evidence

The failure to request a limiting instruction is not, by itself, ineffective assistance of counsel. *Greene v. State,* 928 S.W.2d 119, 124 (Tex.App.-San Antonio 1996, no pet.). However, Easley's counsel should have requested an instruction limiting the purpose for which the jury could consider the rebuttal evidence. Therefore, the first prong of *Strickland* is met. However, Easley fails to demonstrate a reasonable probability that a different outcome would have resulted but for trial counsel's failure to seek a limiting instruction. The second *Strickland* requirement is not met, and the claim of ineffective assistance of counsel fails.

E. Trial counsel's failure to request an instruction on temporary insanity

Easley argues that it was error for trial counsel not to request an instruction at the punishment stage of the trial on temporary insanity due to *voluntary* intoxication. Ineffective assistance of counsel at the punishment stage is not governed by the *Strickland* standard, but by the standard announced in *Ex parte Duffy,* 607 S.W.2d 507 (Tex.Crim.App.1980). This standard requires that we evaluate a complaint of ineffective assistance at the punishment stage determining, first, whether counsel was reasonably likely to render effective assistance, and second, whether counsel reasonably rendered effective assistance. *Cardenas v. State,* 960 S.W.2d 941, 947 (Tex.App.-Texarkana 1998, no pet.). This standard also requires a showing of harm due to the ineffective assistance. *Stone v. State,* 751 S.W.2d 579, 582 (Tex.App.-Houston [1st Dist.] 1988, pet. ref'd).

4. § 8.04. Intoxication

. . . .

(b) Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried.

Whether appellant was entitled to an instruction under Section 8.04 of the Penal Code [4] depends upon whether the evidence raised the issue of intoxication sufficient to render her temporarily insane. *San Miguel v. State,* 864 S.W.2d 493, 495–96 (Tex. Crim.App.1993). A defendant is entitled to an instruction on every defensive or mitigating issue raised by the evidence regardless of whether the evidence is strong or weak, unimpeached or contradicted, and regardless of whatever the trial judge may think about the credibility of the evidence. *Arnold v. State,* 742 S.W.2d 10, 13 (Tex.Crim.App.1987). However, evidence showing the defendant was intoxicated and nothing more does not justify submission of an issue on temporary insanity, and refusal to submit such a charge in mitigation of punishment is not error. *Sawyers v. State,* 724 S.W.2d 24, 33 (Tex. Crim.App.1986).

In *Arnold,* the Texas Court of Criminal Appeals found that, in order to show entitlement to an instruction on temporary insanity due to intoxication, even at the penalty stage, the defendant must show both (1) that she was intoxicated and (2) that she did not know her conduct was wrong or was incapable of conforming her conduct to the requirements of the law she violated at the time of the offense. 742 S.W.2d at 16. In *Arnold,* a pool hall worker was convicted of killing a fellow employee. Evidence existed which raised the issue of the defendant's intoxication, but the court found no evidence which raised the issue of temporary insanity since there was no evidence that the defendant did not know his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he violated at the time of the offense. The court concluded that there was no error by the trial court for not submitting the issue as requested.

In the present case, Easley asserts the following evidence raised at trial was sufficient to require the inclusion of a mitigating

(c) When temporary insanity is relied upon as a defense and the evidence tends to show that *such insanity was caused by intoxication,* the court shall charge the jury in accordance with the provisions of this section.

. . . .

TEX. PENAL CODE ANN. § 8.04 (Vernon 1994).

instruction on temporary insanity due to voluntary intoxication if one had been requested: (1) her belief that the victim was trying to kill her by forcing her to take pills; (2) lack of mental recall about the events; (3) outward signs of disorientation and grogginess indicating an altered state of mind at the time the police arrived, lasting through the jail booking and up until the time she remembered being at the hospital; and (4) the unknown synergistic effects of the ingestion of butalbital, theophylline (similar to caffeine), and diphenhydramine (an antihistimine).

Just as in the guilt/innocence phase, there is no evidence of Easley's state of mind during the offense due to her lack of recall. Therefore, there is no evidence that she did not know her conduct was wrong or was incapable of conforming her conduct to the requirements of the law. Easley does not meet the second requirement as set out in *Arnold* and was therefore not entitled to an instruction on temporary insanity due to voluntary intoxication. We therefore cannot find ineffective assistance of counsel for counsel's failure to request an instruction on temporary insanity.

Based upon the totality of the representation, Easley's claim of ineffective assistance of counsel is overruled.

The judgment of the trial court is affirmed.

CORNELIUS, C.J., not participating.