6-96-028-CV Long Trusts v. Dowd 













In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-03-00096-CV


______________________________





IN RE: LEE ANN GROSSNICKLE









 


Original Mandamus Proceeding









 
 



Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter








MEMORANDUM OPINION



 Lee Ann Grossnickle has filed a petition for writ of mandamus in which she asks this Court
to order the 102nd Judicial District Court to immediately transfer venue of actions affecting the
parent-child relationship. She contends the trial court has no discretion but to transfer venue because
she has filed an affidavit indicating she and the child have now resided in Dallas for over six months,
and her former husband, Richard Grossnickle, has not filed a controverting affidavit. See Tex. Fam.
Code Ann. § 155.201(b) (Vernon 2002).

 Mandamus issues only when the mandamus record establishes (1) a clear abuse of discretion
or the violation of a duty imposed by law, and (2) the absence of a clear and adequate remedy at law. 
Cantu v. Longoria, 878 S.W.2d 131 (Tex. 1994); Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex.
1992). Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of
discretion or, in the absence of another statutory remedy, when the trial court fails to observe a
mandatory statutory provision conferring a right or forbidding a particular action. Abor v. Black, 695
S.W.2d 564, 567 (Tex. 1985).

 Her timely motion, in the absence of a controverting affidavit, would typically require
mandatory transfer without necessity of a hearing. Section 155.201(b) provides that transfer is
mandatory "on the timely motion of a party" if the child has resided in another county for six months
or longer. Tex. Fam. Code Ann. § 155.201(b) (Vernon 2002).

 That language is important because Section 155.204(a), which sets out the procedure to be
followed in seeking a transfer, provides that a motion to transfer is timely if made (by the party filing
initial pleadings) at the time the initial pleadings are filed, or within a short time thereafter if filed
by the other party. Tex. Fam. Code Ann. § 155.204(a) (Vernon 2002). If the motion to transfer is
timely, then the opposing party must file a controverting affidavit, or the Section 155.201(b) transfer
is mandatory. Tex. Fam. Code Ann. § 155.201(b).

 Further, there is an exception to the rule which explicitly provides that, if a suit to modify or
motion to enforce is pending at the time a subsequent suit or motion is filed, the court may transfer
the proceeding only if the court could have transferred it at the time the pending motion was filed. 
Tex. Fam. Code Ann. § 155.201(c) (Vernon 2002).

 The record provided to this Court does show that the residence of Lee Ann and the child has
changed for a period of over six months. It does not, however, clearly show that no pending motion
or suit for modification was before the trial court at the time of its filing or that the motion was
"timely" as required by statute. Indeed, we will take judicial notice of the fact that an appeal from
a ruling by the trial court on child support is presently pending before this Court for decision. 
Further, this record does not reflect whether additional matters are continuing to be heard by the trial
court of continuing jurisdiction that might also impact the availability of a transfer of venue at this
point.

 Section 155.204 contemplates the filing of the motion to transfer venue at the time of the
filing of the initial request for relief. Tex. Fam. Code Ann. § 155.204 (Vernon 2002). It is not clear
from the record provided in this mandamus that this occurred in the present case, and in Richard's
response, he states that the matters presently before this Court were filed several years before Lee
Ann filed her motion to transfer venue in March 2003. 

 Accordingly, we cannot conclude from the record presented that the trial court abused its
discretion by declining to immediately transfer venue and instead setting the motion for a hearing. 

 We are aware that this matter has been set by the trial court for a hearing on the venue issue. 
When a court renders a final divorce decree, it acquires continuing, exclusive jurisdiction over the
matters in the decree affecting a child of the marriage. Tex. Fam. Code Ann. § 155.001(a) (Vernon
2002); In re G.R.M., 45 S.W.3d 764, 766 (Tex. App.-Fort Worth 2001, no pet.). As the court which
attained that status under an earlier transfer of venue, the 102nd Judicial District Court retains
continuing, exclusive jurisdiction over the child unless jurisdiction has been transferred under
Sections 155.201-155.207 of the Texas Family Code or an emergency exists. See Tex. Fam. Code
Ann. §§ 155.001(c), 155.002, & 155.201-.207 (Vernon 2002); In re T.J.L., 97 S.W.3d 257, 263
(Tex. App.-Houston [14th Dist.] 2002, no pet.); G.R.M., 45 S.W.3d at 766-67.

 We are confident that all necessary matters will be addressed during the hearing so that the
trial court may make a ruling based on the complete status of the case.


 We deny the petition.




 Jack Carter

 Justice


Date Submitted: August 13, 2003

Date Decided: August 14, 2003



nd that he was in the hospital for psychiatric
problems when the charged offense occurred. The trial court granted both motions. In the sanity
evaluation submitted to the court, we find an accounting of the facts of this incident:

 Mr. Woods explained that he was released from TDCJ (the Walls Unit in Huntsville)
the day before the alleged offense occurred. He said he took a bus to Houston,
bought some fast food and "junk food" at the Greyhound bus station, then purchased
some beer, and slept outdoors on the Miller Theater hill in Hermann Park. The next
day, he said, he went to the Social Security office downtown (on Bell Street) to see
about getting his SSI benefits resumed, and was frustrated by the need for a
reevaluation because he "wanted (his) money right away." Thinking that being
admitted to a psychiatric facility would speed up his eligibility, he then went to Ben
Taub Hospital, where he presented with (sic) the complaint of having the urge to
either jump off a bridge into Buffalo Bayou or walk in front of a train crossing
Houston Avenue. He said he was turned down for admission, went to a vacant floor
of the hospital building, and "grabbed one lady and then another and tore their clothes
off."


Given defense counsel's knowledge as indicated in her motions, it appears that counsel should have
filed the notice required in Tex. Code Crim. Proc. Ann. art. 46.03, § 2(a) (Vernon 1979). The State
argues in its brief that a defense counsel who would file such motion before there was a professional
evaluation would do so prematurely and run the risk of sanctions under Tex. Code Crim. Proc.
Ann. art. 1.052(e) (Vernon Supp. 2001). However, given defense counsel's knowledge of Woods'
actions and claims, such a motion would be neither premature nor sanctionable.

 Even if defense counsel was deficient in this respect, Woods must also show that the
deficiency was so serious as to deprive him of a fair trial. Strickland v. Washington, 466 U.S. at 687. 
In the case of a guilty plea, the defendant must show that counsel's alleged deficiencies caused the
plea to be unknowing and involuntary. State v. Kelley, 20 S.W.3d at 151. Woods and the State both
contend that is not the procedure followed in Harris County. Woods states in his brief that:

 [T]he undersigned's (counsel's) experience has been that in Harris County it is
customary for the motion for competency or insanity to be filed first. If an evaluation
is returned which suggests that insanity is indeed a viable defense, it is more common
for trial counsel to file his notice of intent to present evidence of insanity at that time. 
It would stand to reason that prior to an "insanity finding" from a psychiatrist or
mental health expert, any declaration of intent to present evidence of insanity would
often be rendered moot by contrary findings of the mental health experts which come
later." 

This argument effectively concedes the prejudice prong of the ineffective assistance argument. The
parties agree that no harm would come to a defendant in Harris County who raises the insanity issue
by the means shown in the record here rather than by following the Code of Criminal Procedure. 
Thus, we reject Woods' ineffective assistance claim.

 Woods' second issue raises the question of whether the holding of our prior opinion in In re
R.D.B., 20 S.W.3d 255 (Tex. App.-Texarkana 2000, no pet.), required defense counsel in this case
to seek the appointment of a court-ordered mental health expert to assist the defense. 

 The right of a criminal defendant to such an appointment was established in Ake v.
Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). The court in Ake held that when a
defendant makes a preliminary showing that his sanity at the time of the offense is likely to be a
significant factor at trial, the state is required to provide him access to a psychiatrist's assistance on
this issue if he cannot otherwise afford one. Id., 470 U.S. at 74. While the state is not required to
purchase for the indigent defendant all the assistance his wealthier counterpart can buy, he is entitled
to the basic tools of an adequate defense. Id., 470 U.S. at 77. 

 In R.D.B, 20 S.W.3d 255, we recognized the importance of a mental health expert to assist
the defense. Contrary to the State's assertion, the mental health expert is more than just a witness;
his purpose is to provide defense counsel with a basic tool for determining whether a mental health
report favorable to the State is correct, or whether to go forward with a plea of insanity. The defense
mental health expert serves as a valuable second opinion in the inexact science of psychiatry, where
opinions and diagnoses on the same person may differ widely.

 While in most claims of ineffective assistance the record generally does not contain sufficient
information to rebut the presumption that counsel functioned effectively, (2) the record in this case, as
in In re R.D.B., contains a substantial amount of information regarding Woods' previous mental
health history. As we previously noted, counsel was evidently aware of this history at the time she
filed her motions under Tex. Code Crim. Proc. Ann. art. 46.02 (Vernon Supp. 2001), and art. 46.03
(Vernon 1979). The court-appointed mental health expert filed two written reports in which he
found that Woods' father had beaten him with a two-by-four when he was a child and had thrown
him out the window where he struck his head on a rock. Woods had been committed at age thirteen
to a state mental hospital. There is evidence that he heard voices telling him to do bad things and
that he suffered hallucinations. There is a history of other commitments to mental institutions
because of his mental health. Even if Woods' post-trial motion is ignored, there remains substantial
evidence, known to trial counsel, showing past mental problems.

 While in no way disparaging the report of the court-appointed psychiatrist, we recall the
language of the Supreme Court in Ake, which reminds us that psychiatry is not an exact science, and
the same symptoms in the same person, examined by different psychiatrists, may very well result in 
different opinions as to condition and treatment. More than one opinion would reduce "the risk of
an inaccurate resolution of the sanity issues . . . ." Ake v. Oklahoma, 470 U.S. at 82. Like In re
R.D.B., and unlike Easley, we have a significant recorded history of mental illness. In addition, the
facts of the incident itself, particularly the location, further suggest the need for professional
assistance regarding Woods' mental health. We find that as part of counsel's obligation to render
effective assistance, defense counsel was required to request the court-appointed assistance of a
mental health expert. In re R.D.B., 20 S.W.3d at 261. We find that counsel's failure to do so was
prejudicial and undermines confidence in the outcome of the proceedings.





 We sustain the second issue on appeal. The judgment of the trial court is reversed, and the
case is remanded to the trial court for further proceedings consistent with this opinion.


 William J. Cornelius

 Chief Justice


Date Submitted: September 4, 2001

Date Decided: October 26, 2001


Publish




1. 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
2. See Easley v. State, 978 S.W.2d 244 (Tex. App.-Texarkana 1998, pet. ref'd), in which
Appellant claimed ineffective assistance of trial counsel because, inter alia, counsel failed to request
an appointment of a mental health expert for the defense. Just as occurred in the present case,
counsel moved for a psychiatric evaluation of his client under Tex. Code Crim. Proc. Ann. arts.
46.02, § 3 (Vernon Supp. 2001), 46.03, § 3 (Vernon 1979 ). Finding no lack of effective assistance,
we stated:

 [S]ince the record shows that Easley's lawyer did file a motion for evaluation of
Easley's mental status and competency to stand trial, and since her appellate counsel
did not dispute that this motion was granted or that the evaluation was performed, it
is a reasonable conclusion that the results of this evaluation could have influenced
the decision by Easley's trial counsel not to make an ex parte request for an expert to
testify as to her state of mind at the time of the killing. In the absence of evidence to
the contrary, we cannot say that this decision denied Easley the effective assistance
of counsel.


Easley v. State, 978 S.W.2d at 250-51 (emphasis added).