

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00036-CR

_____

MICHAEL JESSE NAJERA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 44,838-A

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

With no trial objection regarding the lack of a jury instruction on temporary insanity due to intoxication, Michael Jesse Najera complains in two appeals that he was egregiously harmed by the lack of such an instruction in his Gregg County trial for aggravated assault against a public servant with a deadly weapon—this case—and aggravated assault—a companion case.[1] Following a trial on punishment in the two cases, a jury assessed Najera's sentences at fifty years' imprisonment on the charge of aggravated assault on a public servant and five years' confinement on the charge of aggravated assault. The trial court ordered the sentences to run concurrently. Because we conclude that there was no error from the lack of such a jury instruction on temporary insanity due to intoxication, we affirm the trial court's judgment in this case.

The school bus surveillance video recorded Najera walking beside a stopped bus holding a "steel pipe or some type of metal pipe," which, in the opinion of Daniel Eric Lhuillier, a Longview Police Department detective, was a deadly weapon.[2] After one child exited, Najera stepped up into the bus, seemingly asking driver, Todd Kelley, a question. Kelley told him repeatedly to "get

---

[1]The companion case is our cause number 06-16-00037-CR. Najera filed a single brief covering his appeal of both cases; he raised the sole identical issue in each case. Consequently, this opinion discusses that issue as it relates to each of his convictions.

[2]These facts formed the basis of the State's amended indictment against Najera for the offense of aggravated assault against a public servant with a deadly weapon. The amended indictment stated,

> Defendant did then and there intentionally, knowingly, or recklessly cause serious bodily injury to Todd Kelley by striking Todd Kelley with a club-like object, and that Defendant did then and there use or exhibit a deadly weapon, to-wit: a club-like object, during the commission of said assault, and the Defendant did then and there know that the said Todd Kelley was then and there a public servant, to-wit: a School Bus Driver employed by the Pine Tree Independent School District, and that the said Todd Kelley was then and there lawfully discharging an official duty, to-wit: transporting students on a school bus; AGAINST THE PEACE AND DIGNITY OF THE STATE.

off the bus" or he would call the police. Najera shouted back at Kelley, "Call the police, call the police." He then hit Kelley forcefully with the metal pipe in the back of the head and eye, causing "a very bad injury."

In this case, the jury charge contained the instruction that "[v]oluntary intoxication does not constitute a defense to the commission of a crime." *See* TEX. PENAL CODE ANN. § 8.04(a) (West 2011). Najera contends he was entitled to the inclusion of the remaining subsections of Section 8.04, which state,

> (b)    Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried.

> (c)    When temporary insanity is relied on as a defense and the evidence tends to show that such insanity was caused by intoxication, the court shall charge the jury in accordance with the provisions of this section.

> (d)    For purposes of this section "intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

TEX. PENAL CODE ANN. § 8.04 (West 2011). Whether an accused is entitled to an instruction under Section 8.04 of the Texas Penal Code depends on whether the evidence raised the issue of intoxication sufficient to render him temporarily insane. *San Miguel v. State*, 864 S.W.2d 493, 495–96 (Tex. Crim. App. 1993). An accused is entitled to an instruction on every defense or mitigating issue raised by the evidence "regardless of whether the evidence is strong or weak, unimpeached or contradicted and regardless of whatever the trial judge may think about the credibility of the evidence." *Arnold v. State*, 742 S.W.2d 10, 13 (Tex. Crim. App. 1987) (citing *Warren v. State*, 565 S.W.2d 931 (Tex. Crim. App. 1978)).

3

In *Arnold*, a pool-hall worker was convicted of killing a fellow employee. Evidence existed which raised the issue of the accused's intoxication, but the trial court found no evidence which raised the issue of temporary insanity since there was no evidence that the accused did not know his conduct was wrong or was incapable of conforming his conduct to the requirements of the law. *Id.* at 11. The Texas Court of Criminal Appeals found no error, holding that, in order to show an entitlement to an instruction on temporary insanity due to intoxication, even during the penalty phase, an accused must show both (1) that he was intoxicated and (2) that he did not know his conduct was wrong or was incapable of conforming his conduct to the requirements of the law that he violated at the time of the offense. *Id.* at 16. Thus, evidence showing an accused was intoxicated and nothing more does not justify the submission of an instruction on temporary insanity, and refusal to submit such a charge in mitigation of punishment is not error. *Easley v. State*, 978 S.W.2d 244, 252 (Tex. App.—Texarkana 1998, pet. ref'd) (citing *San Miguel v. State*, 864 S.W.2d 493, 495–96 (Tex. Crim. App. 1993)).

While the evidence might have supported a jury finding that Najera was intoxicated, we find no evidence in this record that he did not know his conduct was wrong or that he was incapable of conforming his conduct to the law's requirements.

Immediately after assaulting Kelley, Najera exited the bus.[3] Although severely injured, Kelley was able to communicate with Lhuillier on the scene. Lhuillier testified, but not as to Najera's drug use or intoxication.

---

[3]Kelley's testimony corroborated the events shown on the recording. Kelley testified that Najera's behavior was "belligerent, very angry"; however, he did not address or testify to his state of intoxication.

A sixteen year old student who had been seated in the back of the bus during the incident testified that she saw the assailant hit Kelley and that he was "a vicious man with a weapon." She also described the children as being scared. This student did not testify as to Najera's state of intoxication. Multiple other students, who had been on the bus that day, testified; however, none of them testified as to Najera's intoxication or sobriety.

Patricia Dawn Burgess testified that, on the same day of the bus attack, she and her husband were outside their home doing some repairs on a door plate, when a man, later determined to be Najera, walked up onto their porch. Najera, who was carrying an orange wrench, asked Burgess' husband if he needed any help doing the repairs. Burgess' husband replied that he did not need any assistance and, with that, Najera walked away. Burgess stated that she felt fearful of the man and that he seemed "dazed" with a "funny look on his face," smiling in an unfriendly manner and nodding his head. When asked if Najera appeared to be on drugs, she answered, "Not that I'm aware of." At trial, Burgess identified Najera as the man who had been at her home.

Armado Juarez-Ortega, an officer with the Longview Police Department, testified that, also on the day of the bus attack, Najera was involved in a hit and run collision with Harold Thompson. Juarez-Ortega had no contact with Najera after he realized that other officers had arrested Najera. He did not testify as to Najera's intoxication or sobriety.

Officer Cody Lusk, also with the Longview Police Department, was one of the officers who responded to the scene of the Najera-Thompson collision that day. When Lusk arrived, he was immediately directed towards Najera by another officer, who informed Lusk, "There he is, he's not being cooperative." Lusk described Najera as pacing back and forth, carrying a large

5

object in his hand, "yelling, cursing, telling me to shoot him." Lusk asked Najera to put his hands behind his back, but Najera continued to walk away, repeating, "Just shoot me." When Lusk finally made contact with him, Najera hit Lusk in the mouth with a closed fist. In response, Lusk pushed Najera back and immediately activated his Taser on Najera. Due to Najera's continued combative behavior, Lusk tased Najera twice more.[4] Lusk testified that he did not smell alcohol on Najera; when asked whether he believed Najera was on drugs, Lusk responded, "Possibly so. Hard to tell at the time." Lusk did agree, however, that Najera appeared to be "jittery and wired." Lusk believed that Najera understood him when he ordered him to stop, turn around, and put his hands behind his back. Najera also complied with Lusk's order to drop the wrench he was carrying. When asked if he believed Najera's behavior was strange, Lusk responded that he believed it was.

Thompson, the victim of the hit and run, testified that Najera was swerving on the roadway before Najera collided with him and that he believed Najera's actions were intentional. Thompson stated that Najera would "speed up to try to go head-on with me." Thompson attempted to avoid the collision, but was unsuccessful. Immediately following the wreck, the pair encountered one another on the side of the road. Najera then reached into his vehicle, retrieved an orange wrench, and pointed it at Thompson as if it were a gun. Najera told Thompson, "I'm going to kill you, I'm going to [expletive] you up." At that point, Thompson returned to his vehicle, and Najera started running away from the scene. Thompson stated that, when Najera first approached him on the

---

[4]Lusk testified that he discharged his Taser once in Najera's lip and once in his waist area.

roadway, he believed he might have been an intoxicated driver; however, Thompson later stated that "a drunk person do[es] not follow you across the road. . . . He wasn't drunk. . . . He was on a mission. He didn't get to see his mission. . . . . Just thanks to God that nobody wasn't hurt or killed."[5]

Keiona Webb was Thompson's passenger. Webb testified that she did not believe Najera was an intoxicated driver or that the collision was accidental. Webb stated, "Because it seemed like he came charging at us. After Mr. Thompson kind of swerved, it seemed like he came some more at us . . . ."

Joel Alvarado witnessed Najera's behavior after the collision. Alvarado testified that he heard Najera scream something sounding like "going to die" while at the same time approaching Alvarado. Regarding Najera's behavior, Alvarado stated, "I guess he wasn't there, all there," and described him as "kind of dazing out." Alvarado confirmed that Najera told the police to shoot him and Alvarado thought his comment was "strange." Alvarado agreed that Najera was "messed up" and "the whole thing [was] weird"; however, Alvarado did not comment on whether Najera's behavior was due to having been intoxicated or on drugs.

Caleb Heath Mitchell, a nurse at Good Shepherd Hospital, testified as an expert in nursing and post-operative trauma. Mitchell also interpreted Najera's medical records for the jury. Najera reported to the hospital personnel that he drank on the day of the incident, but he was uncertain of

---

[5]These facts formed the basis of the State's amended indictment against Najera for the offense of aggravated assault. The amended indictment alleged that Najera did "intentionally or knowingly threaten Harold Thompson with imminent bodily injury by stating that the Defendant would kill or assault Harold Thompson, and the Defendant did then and there use or exhibit a deadly weapon, to-wit: a wrench, during the commission of said assault."

7

how much he had consumed. Najera also admitted that "he does meth, but [was] unsure of the last time." The medical records described Najera's mood as "anxious and aggressive." Najera's vital signs were normal, but he would not answer questions in an appropriate manner. In addition, the medical records stated that Najera "[a]ppears in no apparent distress, comfortable, unkempt, well developed, well nourished. Behavior is appropriate for age."

Lana Smith, Jr., a gang specialist for the Longview Police Department, visited Najera in jail. Najera allowed Smith to take photographs of his tattoos. Many of Najera's tattoos reflected that he had gang affiliations. Smith did not comment on Najera's intoxication, drug use, or sobriety at the time of the accident.

Justin Richards, a detective for the Carlsbad, California, Police Department, also testified that Najera had been affiliated with gangs. Richards described the effects methamphetamine might have on a person, which included elevated pulse and heart rate, "blown-out pupils," sweating, and unclear thinking. Richards also stated that prolonged methamphetamine use increases volatility in a person and might lead to hallucinations. Richards testified that Najera had several convictions in California, including two for possession of a controlled substance and one for driving under the influence causing injury.

Najera testified that he was thirty-six years of age, was born in California, and had eight siblings. Najera described his home as being "kind of broken" and stated that he was mentally, physically, and sexually abused as a child. Najera explained that he began drinking alcohol when he was fourteen or fifteen years of age, but did not like it. He also stated that he "tried" marihuana but then "went and started doing meth instead of all those drugs." Najera admitted that he began

8

stealing car stereos to support his methamphetamine habit. Najera was arrested as a juvenile for possession of marihuana and methamphetamine. He also admitted to abusing methamphetamine as well as heroin. At twenty or twenty-one years of age, Najera went to prison for the first time; thereafter, he was in and out of prison for twelve years. Najera stated that he used drugs during the time he was in prison. Najera attempted to give up drugs on several occasions, but was always unsuccessful in his efforts.

Najera stated that, on the day of the incident at issue, he had been smoking methamphetamine and drinking beer.[6] Najera testified that he had seen a little girl start crying as soon as she exited the school bus and that he believed that someone had been mean to her.[7] Within a few minutes of seeing her, Najera boarded Kelley's bus and assaulted him; however, Najera testified that he was not certain that the little girl had been on that particular bus. Najera recalled being angry and he admitted that he hit Kelley "really hard" with a metal club. Najera also stated that he did not know Kelley.

Following the assault, Najera returned to his trailer, drank some beers, and then left to go purchase additional beer. Najera stated that he had not consumed any methamphetamine after four o'clock that day. Najera explained that he "started tripping out," "like somebody was out there

---

[6]Najera stated he had consumed "a couple of beers." Najera also admitted that he had been using methamphetamine and drinking alcohol for a week or two before the accident.

[7]Najera explained that he had been in a similar situation "where [he] would cry and cry and cry, and wouldn't be able to explain to [his] parents what was going on with [him]." "So [he] felt that little person was going through the same thing."

9

looking for [him] or something."[8]  Najera claimed that the reason he hit Thompson's vehicle was because he was searching for his telephone.  Najera admitted that, when he retrieved the wrench, he was "trying to scare him away."  He also recalled that, when Lusk prepared to arrest him, he responded by telling Lusk to shoot him and he "guess[ed]" that he really wanted him to do so.  After testifying to his version of events, Najera apologized to Kelley.  Najera denied that his tattoos connoted violence, but admitted that he had been part of a gang.  Najera also claimed that he had never used violence in the past.

Although Najera made no objection to the charge at trial, he contends that the alleged charge error was not waived because it impaired his fundamental right to a fair and impartial trial.  Najera's argument is unavailing.  First, the Texas Court of Criminal Appeals has held that "there generally is no 'error' in the charge unless an accused objects in writing to the claimed 'errors' of commission and omission in the charge."  *Posey v. State*, 966 S.W.2d 57, 61 (Tex. Crim. App. 1988).  Second, even had Najera brought the claimed "fundamental" error to the trial court's attention during trial, his argument remains meritless.  While there was evidence suggesting that Najera had been drinking alcohol and ingesting methamphetamine and that his behavior reflected he had been doing so, there is no evidence that his intake of these substances resulted in his inability to know his conduct was wrong or that he was incapable of conforming his conduct to the requirements of the law.

---

[8]At that point in the trial, Najera's counsel stated, "Sometimes we would call it 'paranoid,' but you felt somebody was after you.  Okay."  Najera did not respond to his counsel's comment, and his attorney proceeded to question him.

Because there was no error in the charge, we need not address harm. The trial court properly charged the jury based on the evidence; any other charge would have been improper. Najera's point of error is overruled.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:     November 30, 2016
Date Decided:       January 5, 2017

Do Not Publish